Roscoe COTTON, Appellant,

v.

Bill ARMONTROUT, Acting Warden and John Ashcroft, Attorney General of the State of Missouri, Appellees.

No. 84–2642.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1985.

Decided Feb. 18, 1986.

Timothy Tryniecki, St. Louis, Mo., for appellant.

John J. Oldenburg, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Roscoe Cotton appeals from the district court's[1] denial of his petition for a writ of habeas corpus. He was convicted of first degree assault on the basis of eyewitness testimony, and is serving a life sentence as a persistent offender. His conviction was affirmed in *State v. Cotton*, 660 S.W.2d 365 (Mo.App.1983). Cotton argues that the identification testimony of the witnesses at trial should have been suppressed because the pretrial identification procedures were suggestive and created a substantial likelihood of misidentification. He also argues that the state court's refusal to submit his instruction regarding eyewitness identification denied him his right to a fair trial.[2] We affirm.

Evidence at trial indicates that Ingrid Smith and Annette Tatum, employees of the Ladies Center, were approached by Cotton one night as they were leaving work. He told them he was looking for a job. Smith told him that men were not employed at the center. Two weeks later Cotton walked into the Ladies Center and ordered Smith and Tatum onto the floor. As Tatum started to comply, Smith ran out the back door. Cotton's gun then accidentally discharged and wounded Tatum. A delivery man, Maurice Trammell, reported seeing Cotton running from the area sometime later.

Tatum, Smith and Trammell identified Cotton in photographic arrays. Cotton also appeared in a showup, at which time Smith made a positive identification, and Tatum made a more tentative identification. Cotton had not been arrested at the time the showup occurred, but he was read his *Miranda* rights. The state trial court conducted a pretrial suppression hearing, and denied the motion to suppress. All three witnesses identified Cotton at trial. Cotton testified on his own behalf and stated he was not at the Ladies Center at the time in question, but he could not remember exactly where he was at the time.

Cotton argues that the showup was impermissibly suggestive because it indicated to the witnesses that he was the prime suspect. He argues, and to some extent we agree, that the showup was unnecessary in this case, and the police should have used a lineup. Cotton also argues that the pretrial photographic arrays were impermissibly suggestive because he was the only person in jail overalls in the photographs shown to Trammell. He argues

---

1. The Honorable William L. Hungate, United States District Judge, Eastern District of Missouri.

2. These issues were addressed by the Missouri appellate court in the direct appeal of Cotton's conviction. A motion for transfer to the Missouri Supreme Court was denied. *Cotton*, 660 S.W.2d at 365.

that this suggestiveness spilled over to the other witnesses at the hearing on the motion to suppress, but fails to state how this occurred.

■ Suggestive pretrial procedures, without more, do not require a finding that due process rights are violated. The issue is whether the pretrial identification procedures created a substantial likelihood of irreparable misidentification, or whether the in-court identification had a reliable and independent basis. *Manson v. Brathwaite*, 432 U.S. 98, 114, 116, 97 S.Ct. 2243, 2253, 2254, 53 L.Ed.2d 140 (1977). When the state court's factual findings are given proper deference under 28 U.S.C. § 2254(d), we find there is sufficient evidence in the record to support them. *See Graham v. Solem*, 728 F.2d 1533, 1540–42 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). The women had met Cotton on two separate occasions. Both gave descriptions of Cotton, which, although not perfect, fit his general appearance. Both women were able to pick Cotton out from the photographs. Smith gave a positive identification at the showup, and Tatum, although more tentative, also identified Cotton at the showup as her assailant. Finally, the showup occurred only two weeks after the shooting incident. On the basis of these facts, we do not believe that the suggestive pretrial identification procedures created a substantial likelihood of misidentification.

■ Cotton also argues that he was denied a fair trial because the district court refused to submit his instruction on eyewitness identification. In *United States v. Dodge*, 538 F.2d 770, 784 (8th Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977), a similar issue was raised on direct appeal, and we suggested that an instruction on eyewitness identification should be given when identification of the defendant is based solely or substantially on eyewitness testimony. Although we did not specifically adopt the *Telfaire* model identification instruction, set forth in *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C.Cir.1972), we noted it with approval. *Dodge*, 538 F.2d at 784. However, failure to give a *Telfaire* instruction concerning eyewitness identification is not constitutional error if the issue is adequately covered by other instructions. Here, instruction number one dealt with the credibility of the witnesses and instructed the jury on the ability and opportunity of the witnesses to observe and remember the crime. The other instructions made it clear that the state had the burden of proof to show beyond reasonable doubt that the defendant was at the scene of the crime and committed the assault. The jury was sufficiently instructed on the issue of eyewitness identification, and therefore Cotton was not denied a fair trial.

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Where identification procedures are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," due process demands that the identification testimony be suppressed. *Sanchell v. Parratt*, 530 F.2d 286, 293 (8th Cir.1976). Here, the identification procedures made it all but inevitable that Tatum, Smith, and Trammell would identify Cotton as the perpetrator and therefor were impermissibly suggestive.

On the day of the incident, Trammell viewed at least fifty photographs and did not identify any, although Cotton's photograph was one of those he viewed. More than a month later, he was shown additional photographs. The police told him that the suspect was in this set. Cotton was the only man in any of the photographs to appear in jail coveralls. Trammell identified Cotton.

Approximately two weeks after the incident, Tatum and Smith separately viewed several hundred photographs. Both women tentatively identified Cotton as the person who had been in the Ladies Center. That same evening, both women viewed Cotton in a one man show-up. Even then,

Tatum testified that she could not positively identify Cotton as her assailant.

In light of the above circumstances, the witnesses had no real choice other than to identify Cotton as the perpetrator of this crime. Police procedures selected Cotton for the witnesses. He was in jail coveralls for Trammell, and he was the only live body presented to Tatum and Smith. These procedures were unnecessarily suggestive. The identification testimony should not have been admitted.